## ABERCROMBIE v ROOF

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5725. Decided March 18, 1940.

130

Leo S. Brumleve and John L. Eursberger, Cincinnati, for appellant.

Waite, Schindel & Bayless, Cincinnati, for appellee.

**OPINION**

By ROSS, J.

This proceeding is an appeal on questions of law seeking to set aside a verdict and judgment of the Common Pleas Court of Hamilton County in favor of the defendant in a malpractice action.

The plaintiff claims in his pleadings that he employed the defendant to treat him for a diseased condition, commonly known as varicose veins, that the defendant suggested an operation, that the plaintiff submitted to such operation at a hospital, that alcohol instead of novocaine was injected into his body as an anaesthetic, that he suffered excruciating pain during the operation and communicated this fact to the defendant, who failed to investigate the cause of this unusual and unwarranted pain, that the physician failed to investigate after such operation the cause of continued pain, though requested so to do, that the defendant neglected the plaintiff for some ten days, that the tissues of the plaintiff's body in the operated areas became infected and diseased, that the defendant negligently massaged the infected areas causing embolisms in the lungs of the plaintiff, and that he was confined in the hospital as a result of such negligence for many weeks.

The defendant denies that alcohol was injected into the body of plaintiff, or that he was in any way negligent, either in the operation or post-operative treatment.

The trial of this case occupied thirteen days and the record of the evidence is extremely voluminous.

Much of the evidence is in violent conflict upon the issues presented.

The verdict of the jury was in favor of the defendant.

The defendant in a supplemental brief asserts that the trial court should have instructed a verdict in favor of the defendant. No cross-appeal has been filed. Defendant evidently relies upon the case of **Hrovat v Cleveland Ry. Co., 125 Oh St 67.**

Three distinct issues of negligence were presented by the pleadings and evidence to the jury.

First—negligence in the pre-operative technique in the administration of a local anaesthetic.

Second—negligence during the process of operation in failing to heed the

protestations of plaintiff that he was suffering undue pain.

Third—negligence in post-operative treatment and care of the patient.

It will be apparent in the later discussion of the assignments of error involving consideration of the evidence that in the opinion of this court there was sufficient evidence to require the submission of the case to the jury on one or more of the issues of negligence noted.

We, therefore, consider it unnecessary to recite here in connection with this claim of the plaintiff, the evidence, which, in our opinion, will demonstrate that such claim for an instructed verdict in his favor is unfounded. To do otherwise would result in repetition, which would unduly extend this opinion. It is our conclusion upon this phase of the presentation, however, that the position of the defendant, that he was entitled to an instructed verdict, is unfounded.

The plaintiff has presented seven assignments of error, among which is not included any claim that the verdict is against the weight of the evidence. The plaintiff, on the contrary, has specifically stated that he does not rely upon this as an assignment of error, so the same is not considered by the court.

A detailed statement of the facts as developed by the evidence is necessary in order to intelligently approach a consideration of such assignments of error, especially in view of the claim of the defendant that he was entitled to an instructed verdict in his favor.

There is evidence that the plaintiff had, prior to June, 1937, for some time suffered from varicose veins and phlebitis. He was treated by his family physician, Dr. James Stewart Matthews. The condition in the period mentioned becoming more acute, he, upon the suggestion of Dr. Matthews, consulted the defendant, who advised an operation, which he agreed to perform. The plaintiff selected one of two hospitals suggested by the defendant as the place for the operation, which took place on September 4, 1937.

The defendant decided that a local anaesthetic was sufficient and pre-scribed novocaine and adrenalin. The anaesthetic was prepared by an employee of the hospital in the absence of the defendant. The solution was injected into the operative area by the defendant, who made no examination of the fluid. He did not smell it or in any way attempt to ascertain its nature. Alcohol has a distinctive odor.

Immediately upon injecting the fluid supposed by the defendant to be an anaesthetic, the plaintiff complained of intense pain and continued to complain during the operation. (This is denied by the defendant and the attendants present at the operation.) The defendant proceeded without any interruption, or attention to the complaints of the plaintiff, with the operation, bandaged the operated areas and permitted the plaintiff to go immediately to his home. The defendant told the plaintiff to come to his office in a couple of days, or, if inconvenient, he would visit him in his home.

The plaintiff suffered continuously from the time of the operation, the pain becoming more and more acute. He developed a fever. The defendant failed to respond to the plaintiff's request to visit him and relieve his pain.

Dr. Matthews, the plaintiff's family physician, was called in and administered drugs in an effort to relieve the pain. Dr. Matthews was called back several days later, the plaintiff then being in a much worse condition. He found evidence that the operative wounds were exuding a liquid, the plaintiff's bed being stained with the fluid from the wounds. Dr. Matthews changed the dressing, and the next day, September 14, 1937, the plaintiff went to the office of the defendant, who removed the bandages and was horrified to find that the operated areas were infected and that the flesh was in a state of decomposition.

The record shows the following:

"* * * Didn't you say this: 'Mr. Abercrombie, it looks like a mistake has been made here; it appears that solution was not novocaine solution.'

"A. Yes, that is in my deposition.

"Q. You said that?

"A. Yes. Under a nervous tension * * *

"Q. You said that; that is all I am asking.

"A. Yes; I agree with you 100 per cent on that.

"Q. Then you said to him: 'The only solution I can think that would cause that condition would be alcohol solution or overdose of adrenalin', you said that?

"A Yes, I answered that.

"Q. I will ask you what Dr. Roof's exact words were?

"A. He said he would be God-damned.

"Q. Then what did he say?

"A. He said a horrible mistake had been made.

"Q. Then what did he say?

"A. He said I had had an alcohol injection in my legs.

"Q. Did Dr. Roof say anything to Dr. Caruthers?

"A. He did, he said if he wanted to see a fine example of alcoholic injection there it was."

The defendant called in another physician to examine the plaintiff. The defendant then removed the decayed flesh, dressed the area and sent the plaintiff to his home. The defendant did not again see the plaintiff until he visited him at his home, September 21, 1937. The defendant then and there made an examination of the affected areas and "took his hands and tried to close the big holes in my limbs"—"he tried to pull them together". The defendant was endeavoring to ascertain whether he could sew up the holes or would have to engraft skin. The defendant denies that he endeavored to close the holes or manipulated the operative areas.

The next day the plaintiff developed a pulmonary embolism and was taken again to the hospital, where he remained until November 7, 1937. The plaintiff while there suffered severe pain, and it was necessary to resort to the use of oxygen tents to save his life.

The plaintiff has since the experiences related and his release from the hospital suffered a permanent impairment in walking, and is required to keep off his feet as much as possible, and suffers pain and numbness in the groins.

The plaintiff assigns as the first error for the consideration of the court, the giving of defendant's special charge No. 1.

A narrative and verbatim bill of exceptions have been presented to the court. The failure of counsel to refer to the verbatim bill has not greatly aided the court in endeavoring to locate the basis for the assignments of error noted. The rules of this court require definite references to the bill of exceptions in support of statements of fact in the brief. Failure to comply with this rule has again made the work of the court difficult especially when dealing with a record of almost one thousand pages.

The charge complained of in this assignment of error does not appear in the original papers, nor does it appear to have been incorporated in the verbatim record. We do not find it quoted as given in the narrative bill and in the interests of justice, we will consider it. It appears as follows:

"The court charges you that the defendant, by reason of his contract with the plaintiff, did not guarantee a cure, nor did he undertake that nothing serious would arise as the result of his treatment."

This is not the charge as quoted in the plaintiff's brief, which is as follows:

"The court charges you that the defendant, by reason of his contract with plaintiff, did not guarantee a cure, nor did he warrant that the operation would be successful, nor did he undertake that nothing serious would arise as a result of his treatment." We find no error in the giving of this charge.

The second assignment of error deals with the giving of defendant's special charge No. 7. We are again compelled to refer to the narrative bill of exceptions.

Special charge No. VII is as follows:

"The court charges you that the plaintiff must prove by a preponderance of the evidence that the defendant injected alcohol into the plaintiff during this bilateral vein ligation operation."

This charge the plaintiff quotes correctly from the narrative bill.

The defendant claims that all this charge does is to require a preponderance of the evidence in proving alcohol was injected into the plaintiff. This is not the limit of the natural and logical inference from the language used, nor did the jury undoubtedly so consider it. It is a mandate upon the plaintiff. The natural inference, though not expressed in terms, is that if the plaintiff fails to comply with this mandate he fails in his case. ▮▮▮▮ Of course the charge as far as it goes states a correct proposition of law, but it is inapplicable to the facts in the case and is misleading, especially in view of the failure of the court to properly charge upon the issues in the case. Reference to the general charge shows that the court in effect read all the pleadings to the jury, concluding with the statement:

"These issues may be briefly stated as follows:

First; Was the defendant, Dr. Roof, negligent in one or more of the particulars set out in the petition as I have just summarized them to you?

Second; If so, was such negligence the proximate cause of the injuries complained of by the plaintiff, Mr. Abercrombie?

Third; What was the measure and extent of the damage suffered by plaintiff?"

There was more than one issue of negligence. This charge applied to only one of those issues, the claim that alcohol was injected by mistake. The jury would naturally suppose, the other issues not being pointed out to them, that if they were in doubt as to this claim, then they must resolve the case in favor of the defendant, as they did.

The giving of this charge, under the circumstances, was prejudicially erroneous.

In the third assignment of error, it is charged that the court abused its discretion in limiting the cross-examination by the plaintiff of one of the defendant's witnesses, a hospital nurse.

The court refused the plaintiff the right to inquire of the nurse what, if any, statements the defendant had made to her after discovering the adverse condition of the plaintiff. The question sought to elicit what the defendant had done in the nature of an inquiry about the use of alcohol. The court stated that the plaintiff would be required to make the nurse his witness in chief before pursuing such inquiry. In this, the trial court clearly erred. The questions upon cross-examination were clearly competent and important to the plaintiff. It was not necessary to make a profert upon cross-examination. **Martin et v Elden, 32 Oh St 282.**

The trial court abused its discretion in limiting this cross-examination, thereby causing error, prejudicial to the plaintiff to intervene.

In the fourth assignment of error, the plaintiff charges that the trial court committed error in permitting physicians, other than the defendant, who testified as experts to state, as their opinion, that the defendant was not guilty of lack of care in the technique he employed in the operation and post-operative treatment. One of the questions may be given as an example:

"Q. Now, doctor, I am asking this question which I shall designate as number one, as to whether or not you are able to form an opinion as a physician and surgeon concerning a bilateral vein ligation performed by a physician and surgeon in good standing in this community, who limits his practice to general surgery, and in answering this question about this operation, your opinion is to be based upon the following facts, which you are to as-

sume to be true. The facts as to this operation are as follows:"

Then follows a number of pages in which is related the various acts which the defendant claims he performed in connection with the operation upon and treatment of the plaintiff, concluding with the following query:

"The question now is are you able to form an opinion of that operation, from the above facts, as to whether or not, during this entire operation, with regard to the examination or determination of the solution which this surgeon injected into this patient during this operation, the surgeon did anything which failed to comply with the usual and customary care and practice of such surgeons, in performing, under the same or similar corcumstances, such an operation in a Class A hospital or in any Class A hospital in this community or in similar localities. Are you able to form an opinion under these facts?"

Again the physician was permitted to state:

"Q. State your opinion and explain it.
"A. Because of my answer to the preceding question describing what I believed to be the character of operation done, I do not believe under those circumstances failed to do anything that he might have done for the benefit of this patient, more than what he did do."

Now, an expert may state what is the approved practice under certain circumstances, but it is not the function of an opinion witness to state that, in his opinion, the defendant physician exercised the proper care or technique in the particular case under consideration. In so doing, he clearly, invades the province of the jury and answers the very question which they are required to answer—Did the defendant use due care? This type of questioning was improper and permitting an-

swers thereto was undoubtedly extremely prejudicial to the case of the plaintiff.

Error here intervened.

In the case of **Mitchell v Industrial Commission, 135 Oh St 110, 13 OO 465,** the court at page 116 say:

"The court properly sustained the objection for the reason that such question was an ultimate issue for the jury. 'The opinion evidence rule has never been so relaxed as to permit an opinion to be given on the precise ultimate fact in issue which is to be determined by the jury. Not even expert testimony is admissible for such purpose.' **17 O. Jur. 447, §352.** See also **Ohio & Indiana Torpedo Co. v Fishburn, 61 Oh St. 608,** 56 N. E. 457, 76 Am. St. Rep. 437; **Fowler v Delaplain, 79 Oh St 279, 87 N. E. 260, 21 L. R. A. (N. S.) 100."**

And in **Fowler v Delaplain, 79 Oh St 279, at page 285,** the court say:

"Witnesses, if properly qualified, may testify as to facts of such evidential value as would assist the jury in arriving at its conclusions upon the determinative questions of the case; but if the vital issues involved in a cause can be decided upon the mere opinions of witnesses, however expert, as has often been remarked, juries might be dispensed with altogether. **Ohio & Indiana Torpedo Co. v Fishburn et, 61 Oh St 608; Railroad Co. v Schultz, 43 Oh St 270, 282, 283."**

The fifth assignment of error was the refusal to give plaintiff's charge No. 1. This charge is as follows:

"The court charges you that it was the duty of the defendant, Dr. Roof, in performing his services for the plaintiff, Towne R. Abercrombie, to exercise the skill, care and diligence which physicians and surgeons of ordinary skill, care and diligence would have exercised in their community under the same or similar circumstances. In considering whether or not such skill, care and diligence was exercised by the defendant, the jury can take

into consideration any evidence which has been admitted by the court about the custom and practice indulged in by such physicians and surgeons. The court further charges you, that such custom and practice does not furnish a test which is conclusive or controlling on you on the question of negligence, nor does it fix a standard by which negligence is to be gauged; but conformity thereto is a circumstance that is to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised. The court further charges you that, if you find that there were customs or practices to which the defendant conformed but you further find that conformity to such customs or practices was dangerous in fact, then conformity to such customs and practices does not establish that the defendant exercised the skill, care and diligence required of him by law."

An operating surgeon is only responsible for failure to use the care which a reasonably prudent person would use under the same or similar ▇▇▇▇▇▇ circumstances and such duty is limited to those matters over which he has direct control and does not include matters within the jurisdiction of the hospital in which he operates.

Such operating surgeon is not responsible for the misuse of drugs prepared by the hospital unless the ▇▇▇▇▇▇ ordinarily prudent use of his faculties would prevent injury to a patient upon whom he operates.

We quote the 2nd, 3rd, 4th, 6th and 7th paragraphs of the syllabus in the case of **Ault v Hall, 119 Oh St 422:**

"2. In an action for negligence, conformity to custom or usage is a matter proper to be submitted to the jury for its consideration in determining whether or not ordinary care has been exercised.

"3. Customary methods or conduct do not furnish a test which is conclusive or controlling on the question of negligence or fix a standard by which

negligence is to be gauged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised.

"4. Methods employed in any trade, business or profession, however long continued, can not avail to establish as safe in law that which is dangerous in fact.

"6. The duty of a surgeon to exercise due care to ascertain that no foreign substance is left in the abdomen of one operated on is not conclusively shown to have been performed by evidence that he followed the usual practice and custom of surgeons of relying on a count by the nurses of sponges used in the course of such operation.

"7. In an action against a surgeon for malpractice the jury should be instructed that the plaintiff must show by a preponderance of the evidence and the jury must find that the defendant in the performance of his service either did some particular thing or things that physicians and surgeons of ordinary skill, care and diligence would not have done under the same or similar circumstances, or that the defendant failed or omitted to do some particular thing or things which physicians and surgeons of ordinary skill, care and diligence would have done under the same or similar circumstances."

The defendant justifies the refusal to give this charge because of the words "in their community", stating that the physician might be justified by practices in places other than the "community" in which the surgeon operated. It will be noted that this language is more limited than that used in the seventh paragraph of the syllabus of the Hall case.

We agree also that the charge is really applicable to more than one proposition of law and would be better calculated to lead the jury if separated into its component parts. ▇▇▇▇▇▇ We can not approve the charge for these reasons.

Error is charged as a sixth assignment in that the court refused the plaintiff's special charge No. 3:

"The court further charges you that methods employed in a profession, however long continued, can not avail to establish as safe in law which are dangerous in fact, if you find that such methods are dangerous in fact."

This charge is drafted in conformity to the syllabus in the case of **Ault v Hall, 119 Oh St 422,** previously quoted.

Some captious complaint is made of it by the defendant in that the word "that" does not appear. We consider the charge intelligible and correct.

Error intervened, prejudicial to the plaintiff, when it was refused.

As the seventh and last assignment of error, it is claimed by the plaintiff that the court committed error in limiting the plaintiff in his opening argument after the evidence. An examination of this situation causes us to conclude that the court in the exercise of its discretion over the trial of the cause did not abuse this discretion.

The plaintiff makes no special assignment of error of the failure of the court to define the issues, as is required. **The Baltimore & Ohio Rd Co. v Lockwood, 72 Oh St 586.** In **Simko v Miller, 133 Oh St 345, 10 OO 535,** the fifth paragraph of the syllabus is:

"5. In submitting a case to the jury, it is the duty of the court to separately and definitely state to the jury the issues of fact made by the pleadings, accompanied by such instructions as to each issue as the nature of the case may require. **Baltimore & Ohio Rd. Co. v Lockwood, 72 Oh St 586,** approved and followed."

The court in effect read the pleadings. He stated that he summarized them. As previously noted, his final statement merely instructed the jury that it was their duty to determine whether the defendant was negligent "in one or more of the particulars set out in the petition."

This case required that the court definitely outline to the jury the three specific elements of malpractice charged. Certainly, this, the trial court failed to do.

For the reasons given, the judgment of the Common Pleas Court is required to be reversed and the cause remanded for a new trial in accordance with law.

HAMILTON, PJ., concurs in judgment.
MATTHEWS, J., concurs in seperate memorandum.

MATTHEWS, J., concurring.

In passing upon the validity of the claim that errors occurred in the trial of this case, I do not overlook the fact that it is conceded that there is abundant evidence to sustain the verdict for the defendant. I also remember that there is a presumption in favor of the validity and regularity of the proceedings of the trial court and that we have no right to disturb its judgment unless substantial error, to the prejudice of the appellant, appears in the record.

1. The first error assigned is in the giving of a special charge. This charge was:

"The court charges you that the defendant, by reason of his contract with plaintiff, did not guarantee a cure, nor did he warrant that the operation would be successful, nor did he undertake that nothing serious would arise as a result of his treatment."

The defendant requested the court to give a series of special charges before argument, of which this was one. The court gave five.

Now in determining whether this charge stated an incorrect rule, and, if so, whether it was prejudicial, it must be considered in conjunction with the other special charges which supplement and explain it. **Construction Co. v Glass, Admx., 122 Oh St 398.**

It is my judgment that when this special charge is read in conjunction with special charge No. 3, no implication, prejudicial to the plaintiff, can be drawn from it. Special charge No. 3 is:

"The court charges you that the duty imposed upon the defendant was that in the operation and treatment he should exercise the ordinary degree of skill, care and diligence exercised by surgeons, under the same or similar circumstances, practicing in this community or similar localities, in the light of modern advancement and learning on the subject."

Reading them together, as we should, and as the jury undoubtedly did, it is seen that the court stated what the defendant was not bound to do and what he was bound to do, and in each instance stated it correctly.

I find no error in the giving of these special charges.

2. Complaint is made because of the giving of this special charge:

"The court charges you that the plaintiff must prove by a preponderance of the evidence that the defendant injected alcohol into the plaintiff during this bilateral vein ligation operation."

It will be observed that while the charge is in the imperative form, there is no statement as to the effect of a failure to comply with the command. There is no statement that upon a failure to prove that defendant injected alcohol, a verdict should be returned for the defendant.

Now, the plaintiff having alleged it, the burden of proving it by the preponderance of the evidence was upon him. A charge stating that and nothing else would have stated the correct rule on the burden of proof. Isn't this charge synonomous? Surely, we are justified in assuming that the jury would construe this charge as having relation to the issues in this case and not as given at large. Of course, no one would understand that the intent was that the plaintiff was under an absolute compulsion to prove the allegation. In its setting, lawyer and layman alike would understand that it meant that having alleged it, he must prove it by the degree stated, otherwise his rights should be determined as though he had not alleged it.

That no prejudice could have resulted from failure to state the effect of lack of proof is made manifest when we look to the general charge in which it was clearly stated that the plaintiff would be entitled to recover if he proved any one of the acts of negligence alleged. Looking to the general charge for this purpose is not an attempt to correct an incorrect special charge by stating the opposite correct rule in the general charge—which, of course, can not be done. It is interpreting a special charge in the light of all the circumstances, and so interpreting it, finding it to state a correct rule. **Makranczy v Gelfand, 109 Oh St 325.**

I find no error in the giving of this charge.

3. It is urged that the court erred in sustaining an objection to questions asked on cross-examination of one of the defendant's witnesses. We quote this part of the record:

"Q. When Dr. Roof spoke to you about this on September 14, 1937, did he ask you then whether or not you had placed alcohol in the container in which the novocaine should have been?

"Mr. Schneider: Objection.

"Mr. Brumleve: This is a conversation with Dr. Roof.

"The Court: It seems to me that this might be a proper question in the examination in chief if you were calling this witness as to a self-serving declaration, but at this time on cross-examination I do not understand it is proper.

"Mr. Brumleve: I don't think that is a self-serving declaration, if your Honor please. It is a declaration against interest.

"The Court: I used the wrong expression, I meant a declaration against interest.

"Mr. Brumleve: I have a right on cross-examination to bring out any conversation which she had with the defendant in this case about these things.

"The Court: It seems to me that is making the witness your own witness.

"Mr. Brumleve: Well of course, your Honor presides and rules, of course I don't think it does. This is a witness who is brought here for the defense against the plaintiff's case. I have a right to examine this witness as to any conversation that she had with Dr. Roof concerning this case.

"Mr. Schneider: Your Honor limited me rather strictly it seems to just on the same ground.

"Mr. Brumleve: It was on an entirely different ground.

"Mr. Schneider: That is what you think.

"The Court: I am going to sustain the objection at this time. If you want to call this witness as your witness * * *.

"Mr. Brumleve: Why if your Honor please, I wouldn't call a hostile witness as my witness.

"Mr. Schneider: I object to a statement like that.

"The Court: I will sustain the objection. You will have the opportunity to call the witness.

"Mr. Schneider: And move the jury be instructed to disregard that last remark of counsel.

"The Court: The jury has been instructed several times in this case on the matter of comments.

"Q. I will ask you what did Dr. Roof say to you when he asked you about that operation on September 14, 1937?

"Mr. Schneider: Objection.

"The Court: The same ruling.

"Q. I will put another question, and don't answer until there is an opportunity for objection. Did Dr. Roof at the time when he communicated with you, ask you if you were sure that alcohol was not furnished to him for the purpose of the injection into the veins?

"Mr. Schneider: Objection.

"The Court: I will sustain the objection.

"Mr. Brumleve: May I have an exception?

"The Court: For the same reason that the court has indicated."

It will be observed that the court sustained the objection, because the subject had not been referred to in the direct examination. This was certainly a wrong reason. Cross-examination is not limited to that which formed the subject of the direct examination. A witness may be questioned on cross-examination about any subject concerning which he might have been questioned on direct examination, limited only by the rule that a defendant may not develop an affirmative defense on cross-examination of the plaintiff's witness. **Legg v Drake, 1 Oh St 286; Smith v State, 125 Oh St 137.**

The ruling itself was wrong.

On cross-examination of the defendant's witness the plaintiff may inquire for the purpose of endeavoring to develop any admissions against interest by the defendant or any previous statement made by the witness inconsistent with his testimony. Cross-examination is necessarily exploratory and a wide latitude should be permitted. While the extent of cross-examination upon a particular phase is within the sound discretion of the trial court, which will not be disturbed by an appellate court in the absence of a clear abuse, nevertheless, a refusal to permit any inquiry at all upon a relevant subject is reversible error. District of Columbia v Clawans, 300 U. S. 617.

In Alford v U. S., 282 U. S. 687, the court held that:

"The ruling of the trial court, cutting off **in limine** all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination, was an abuse of discretion and prejudicial error."

It will be seen that at this trial, the court stopped the cross-examination at the very threshhold of the inquiry and refused to permit any inquiry on this subject on cross-examination. It is manifest that the cross-examiner was seeking to explore and develop the nature of a conversation between the defendant and this witness relating to the operation which was the basis of this malpractice action. It was relevant and may have developed evidence of material value to the plaintiff. The prejudice was not cured by the sugges-

tion that the plaintiff call the witness in rebuttal as his witness.

4. The court permitted certain physicians to give their opinions in answer to hypothetical questions and this is assigned as error. It will be seen from the quotation in Judge Ross' opinion that the question was abstract, not purporting to relate specifically to what the defendant did in operating upon the plaintiff. The answer was: "1 do not believe under those circumstances failed to do anything that he might have done for the benefit of this patient more than what he did."

It is objected that this question and answer related to the ultimate issue and permitted the expert to state his opinion on that ultimate issue. That is not true. All they did was to express their opinion as to whether the data stated in the hypothesis conformed to the accepted standards of due care. Certainly, this is not the precise ultimate issue in this case.

In my opinion, no error was committed in this respect, justifying a reversal of this judgment.

It is true that in **Mitchell v Industrial Commission, 135 Oh St 110, 13 OO 465,** and other cases, the Supreme Court has stated that opinion evidence on the precise ultimate issue is inadmissible, but those cases are distinguishable upon their facts. In an annotation to State v Steffen, 78 A. L. R., 748, at 755, this subject is discussed, and the lack of reason for the distinction between evidentiary and ultimate facts pointed out.

I concur in the reversal on the sole ground that the court erred in limiting the cross-examination.