SPARGUR, APPELLEE, *v.* THE DAYTON POWER & LIGHT CO., APPELLANT.* (Two cases.)

---

*Motion to certify the record overruled, July 1, 1959.

38

*Messrs. Iddings, Jeffrey & Donnelly,* for appellees.
*Messrs. Landis, Ferguson, Bieser & Greer* and *Mr. Charles S. Bridge,* for appellant.

CRAWFORD, J.  These two cases were tried together and were appealed together.  Plaintiff, Marcia C. Spargur, appellee herein, recovered a verdict and judgment for $120,000 against the defendant, The Dayton Power & Light Company, appellant herein, for having negligently failed to locate and stop a gas leak, thus permitting natural gas to enter her residence and explode, seriously injuring her.

In the other case, plaintiff, Vendrell L. Spargur, appellee herein, husband of Marcia C. Spargur, recovered a verdict and judgment for $15,000 against the same defendant for medical and hospital expenses of his wife and loss of services and consortium.

The evidence discloses that the explosion occurred on December 3, 1954, in a slab-type house newly constructed by the defendant, H. C. Huber Construction Company, Inc., into which plaintiffs had moved on November 23, 1954.  This house was one of several recently built and being built by the Huber organization upon a new plat.  .It is established by the evidence that the gas which exploded had escaped from a break in a two-inch gas main running east and west along the rear of the house and connected with the house by a service line; that the utility room in the residence, containing a gas-fired furnace and water heater, was located in the central portion of the house; and that after the explosive mixture of gas had formed in the house it was ignited by a spark from the furnace.

Joined as defendants, besides The Dayton Power & Light Company and H. C. Huber Construction Company, Inc., were three other construction and contracting companies, but all except the defendant-appellant were dismissed during the progress of the trial.

The negligence found against the defendant-appellant is considerably narrowed by the jury's answers to special interrogatories, as follows:

"Special Interrogatory No. 1 is to be answered in case a general verdict is rendered: 'Was the defendant, Dayton Power and Light Company, negligent?' The answer is 'Yes.'

"Special Interrogatory No. 2 is to be answered in case a general verdict is rendered: 'If your answer to special interrogatory No. 1 is no, do not answer this interrogatory. If it is yes, then answer: In what respect or respects do you find the defendant, Dayton Power and Light Company, was negligent?' See attached sheet. The jury finds for the plaintiffs in both cases Nos. 109911 and 109912 in that the defendant, The Dayton Power and Light Company, was notified that gas was escaping near the place where the explosion occurred, and it was the duty of the defendant, The Dayton Power and Light Company, to proceed to ascertain where said gas was escaping and repair the same; that the defendant, The Dayton Power and Light Company, carelessly and negligently failed to ascertain the location of such leak and stop the same, and by reason of such failure the gas continued to escape from its gas main and entered the home of the plaintiffs and there exploded and caused injury to the plaintiff, Marcia C. Spargur, and the defendant, The Dayton Power and Light Company, is liable therefor."

Additional facts will be noted as they bear upon the several assignments of error.

1. The first assignment is that "defendant is entitled to final judgment because plaintiff failed to introduce a standard of care against which defendant's conduct could be measured."

It is contended that plaintiff's case must fail for lack of special evidence as to what constitutes ordinary care on the part of a gas company upon a complaint such as that of plaintiffs' neighbor and witness, Joseph Verdini, which complaint was received, defendant says, on September 28, 1954. The argument is that this presents a technical question beyond the experience of ordinary jurors so as to require special evidence to establish the proper standard of care; and that for such purpose plaintiffs were required to show what gas companies customarily do in such a situation.

We are referred to the case of *Englehardt, a Minor,* v. *Philipps,* 136 Ohio St., 73, 23 N. E. (2d), 829, which arose in Hamilton County, and a long line of decisions, particularly by the Court of Appeals for Hamilton County, following that case.

It is admitted that none of the cases cited is precisely in point. The fundamental issue always remains whether defendant has exercised ordinary care, and we believe plaintiff has produced sufficient evidence to carry that question to the jury and to sustain the verdicts. In meeting the burden of proof on this issue a plaintiff may choose his own method and select the evidence which he wishes to present. There is no requirement that he prove custom and usage, or that he produce technical experts, unless such evidence is necessary to establish lack of ordinary care.

It is for the jury to determine whether the defendant exercised such care as an ordinarily careful and prudent person in defendant's situation would exercise under the same or similar circumstances. It may be helpful in determining such question to know what others similarly situated customarily do. But evidence of this nature is not an absolute requirement. Paragraph three of the syllabus of *Ault* v. *Hall,* 119 Ohio St., 422, 164 N. E., 518, 60 A. L. R., 128, reads as follows:

"3. Customary methods or conduct do not furnish a test which is conclusive or controlling on the question of negligence or fix a standard by which negligence is to be gauged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised."

Nearly identical language is used in paragraph one of the syllabus of *Witherspoon* v. *Haft,* 157 Ohio St., 474, 106 N. E. (2d), 296.

Presentation of evidence of the kind defendant suggests is usually not only superfluous but is often difficult to present in admissible form. Paragraphs three and four of the syllabus of *Schwer, Admx.,* v. *New York, Chicago & St. Louis Rd. Co.,* 161 Ohio St., 15, 117 N. E. (2d), 696, 43 A. L. R. (2d), 606, read:

"3. Where, in determining whether a defendant exercised that care which an ordinarily and reasonably prudent man would have exercised under the same or similar circumstances,

inquiry need only be made into matters within the common knowledge of men of average general information, evidence as to what other persons did under such circumstances should ordinarily be excluded.

"4. Where, in determining whether a defendant exercised that care which an ordinarily and reasonably prudent man would have exercised under the same or similar circumstances, inquiry must be made into a matter not within the common knowledge of men of average general information, the trial court may admit evidence as to what other persons did under such circumstances if, in the exercise of a reasonable discretion, it determines that the helpfulness to the jury of such evidence in making such inquiry will outweigh the disadvantage involved in risking the injection of collateral issues into the case."

The presentation of such evidence may even prove hazardous. *Jones* v. *Village of Girard,* 111 Ohio St., 258, 144 N. E., 847; *Abercrombie* v. *Roof,* 64 Ohio App., 365, 28 N. E. (2d), 772.

If, as the trial court determined, plaintiff's evidence of defendant's failure to use ordinary care was sufficient to require submission of the question to the jury, defendant has not been prejudiced by lack of particular evidence of the special, technical or exemplary variety for which it contends. If a defense would be aided by such evidence, a defendant can offer it. Here, the defendant did not do so. It cannot complain of plaintiffs' similar omission.

Plaintiffs produced the testimony of Joseph Verdini, their close neighbor, who first said that in the fall of 1954, before the explosion, he made more than one complaint to the defendant, and they presented evidence that the plat was newly developed so that recent utility installations may have deserved special scrutiny; that heavy equipment had recently been used in the vicinity of the gas lines; that the serious break in the main, when finally discovered, bore evidence of a sharp, heavy blow such, it was argued, as might be likely to occur during construction and plat development; that others in the immediate neighborhood had smelled a similar odor, and were available for inquiry and interview, etc.; and that after the explosion on December 3rd gas was discovered to be escaping rapidly from a serious break in the main. There is no evidence that any of the construction work

or moving of heavy equipment occurred after the plaintiffs and their neighbors moved into the completed houses, nor after Verdini's call to defendant (fixed by the latter as September 28, 1954), and before the explosion of December 3, 1954.

Plaintiffs' evidence was not unchallenged, and was, in fact, met by important circumstances in defense. But it was sufficient to justify submitting the case to the jury, and was adequate, if accepted by the jury as true, to support the finding of negligence.

2. It is said that "the evidence as to defendant's investigation of a report made to it on September 28th that a neighbor (of plaintiffs') smelled something like gas is not enough to establish proximate cause (as to the explosion of December 3rd) without basing inferences upon other inferences."

It is contended that only one complaint of escaping gas was received by the defendant and that that one was from plaintiffs' neighbor, Joseph Verdini, on September 28, 1954. This contention is used to support a two-fold argument: (1) That defendant was under less obligation to carry on further or more extensive tests than if there had been repeated complaints, and (2) that, no escaping gas having been detected in response to that call, there was no proof that a leak existed at that time.

The witness Joseph Verdini lived somewhere back of the plaintiffs, and the gas main ran between and along the rear of both their properties. He testified:

"Q. Tell us please whether you called, or telephoned to The Dayton Power and Light once or more than once in regard to this odor? A. It was more than once."
"* * * *

"Q. After you talked with the man from The Dayton Power and Light Company, did you smell this odor any more? A. Yes I did.

"Q. You continued to smell it up until approximately when? A. Until the explosion."

Verdini stated that he was present after the explosion of December 3rd, when appellant's employees were digging down to the break in the main, and that "there was a gas aroma coming out and a big hissing sound."

With reference to the response of defendant's service man to his call, Verdini testified on cross-examination:

"Q. Were you able to locate any gas at that time, the odor of anything that you could locate at that time? A. The service man couldn't.

"Q. Did you? A. Yes."

Verdini's cross-examination also contains the following:

"Q. But you made—you say you made more than one call to Dayton Power and Light? A. I can remember two calls.

"Q. You think you remember two. If I would tell you that The Dayton Power and Light Company has only the one call of September 28, 1954, would you say that you were mistaken about making two calls or not?

"Mr. Jeffrey: I object.

"Mr. Ferguson: (continuing) Q. I say if I told you that The Dayton Power and Light Company had a record of a call from your residence—your name is Joseph, is it not? A. Yes.

"Q. On September 28, 1954—would you still say that you may have called in twice? A. I don't remember, I may have.

"Q. You may have and you may not have? A. That's right. I don't remember."

We have searched the record in vain for any evidence of the number of complaints received by the defendant. There is simply the testimony of Robert Shroder, the defendant's service man, that in response to a call he went to the Verdini residence and that according to defendant's record this date was September 28, 1954.

It was within the province of the jury, therefore, to find whether defendant received more than one call, and to determine the importance of that issue.

Other close neighbors testified that they, like Verdini, smelled an odor resembling gas over a period of several weeks prior to the explosion. While it is true that one of these, Mrs. Gertrude Price, as well as Verdini, said they smelled, or thought they smelled, some similar odor after the main was repaired following the explosion, this is a circumstance to be taken into account by the jury in evaluating their particular testimony.

Robert Shroder, defendant's service man, said that when he

went to the Verdini residence he smelled no gas, but made soap tests of the visible meter connections at the Verdini residence. He said, ''The odor was pinned down to no particular location, just in the back yard,'' and for that reason he made similar tests at the residences on either side of Verdini's. He found no leaks and made no further tests. He did not use a Davis detector for ascertaining whether gas was escaping so as to permeate the ground; he gave the two-fold explanation that there were not sufficient detectors available for every call, and that it was not the practice to use them unless the service man was able to smell gas.

There is no evidence as to what actually caused the break in the main, nor precisely when it occurred. At the place where it occurred the 2-inch main had been bent to follow a curve in the defendant's easement. It was near the point where plaintiffs' service line was connected.

There was evidence of a drop in temperature below the freezing point for a day or more preceding the explosion, and expert testimony to the effect that colder temperatures would, by causing the gas main to contract, open a wider gap where the main was broken; and that freezing of the surface of the ground would also prevent the escape of gas upward and cause it instead to follow open spaces which develop beneath horizontal pipes due to the settling of the earth after excavation.

One cannot read this record without being convinced that the natural gas escaping from the broken main caused the explosion. Defendant's brief so concedes.

There is sufficient circumstantial and other evidence to support a finding by the jury that the break in the main existed at the time of the inspection by Robert Shroder, defendant's service man.

And the additional evidence noted in the discussion of this second assignment of error, considered in conjunction with that previously commented upon, justifies the conclusion that the finding of negligence of defendant in response to Verdini's call is properly supported.

These facts having been found, their causal connection is a logical and permissible deduction.

3. Defendant says, ''There is error in the special charges as

to what plaintiff must prove on the issue of proximate cause.''
The first of these special charges complained of is No. 1, which
reads:

"I charge you that by reason of the highly dangerous
character of gas and its tendency to escape, the defendant, The
Dayton Power and Light Company, must use a degree of care
to prevent the escape of gas from its pipes, commensurate with
the danger, and if the defendant, The Dayton Power and Light
Company, failed to exercise this degree of care and injury re-
sulted therefrom to the plaintiff, Marcia C. Spargur, the de-
fendant, The Dayton Power and Light Company, is liable and
your verdict shall be for the plaintiffs.''

It would be more precise and accurate, of course, to incor-
porate in all such charges an express statement of the principle
of proximate cause. But it is not necessary that a special writ-
ten instruction, given to a jury before argument, should cover
every branch and feature of a case on trial. *Swing, Trustee*, v.
*Rose*, 75 Ohio St., 355, at 369, 79 N. E., 757; *Hunter* v. *Brumby*,
131 Ohio St., 443, 3 N. E. (2d), 353; *Simko* v. *Miller*, 133 Ohio
St., 345, 13 N. E. (2d), 914; *Senn, Admx.*, v. *Lackner*, 91 Ohio
App., 83, 100 N. E. (2d), 419.

Just as the jury was properly instructed in the instant case
to consider together all charges, both general and special, so
we likewise, in determining the adequacy of this special charge,
must consider it along with the general charge; and if, together,
they fully and clearly explain to the jury what the applicable
law is, the special charge, if correct and applicable, is not prej-
udicial.

In the case of *Makranczy* v. *Gelfand, Admr.*, 109 Ohio St.,
325, 142 N. E., 688, an action for wrongful death, wherein a
judgment for plaintiff was affirmed, error was claimed in the
giving of special instructions to the effect that the verdict must
be for the plaintiff if the jury found that a speed in violation of
the statute and of an ordinance caused the injury to decedent.
These instructions omitted not only the spelling out of proxi-
mate cause, but also omitted reference to possible negligence of
the decedent, agency of the driver of defendant's vehicle, and
burden and degree of proof required. The opinion of the court,
in making specific reference to some of these omissions, points

out the adequacy of the general charge in those respects.

On page 338 appears this language:

"Thus, when the entire instructions, both before and after argument, are taken in conjunction, we feel that the jury were properly instructed in the premises, and that no prejudicial error intervened by reason of the special requests before argument."

In *Abercrombie* v. *Roof, supra* (64 Ohio App., 365), while the Court of Appeals of the First Appellate District was not unanimous as to the effect of a certain special charge, all three judges considered the general charge in conjunction therewith. Judge Matthews, in his concurring opinion, at page 380, said:

"* * * Looking to the general charge for this purpose is not an attempt to correct an incorrect special charge by stating the opposite correct rule in the general charge—which, of course, cannot be done. It is interpreting a special charge in the light of all the circumstances, and so interpreting it, finding it to state a correct rule. *Makranczy* v. *Gelfand, Admr.,* 109 Ohio St., 325, 142 N. E., 688.''

Upon careful examination of all the charges, both general and special, given by the court in this case, it is our view that the subject of proximate cause was clearly, adequately and correctly covered and that the jury should have experienced no confusion on the point.

So far as spelling out the requirement of proximate cause is concerned, the same observation will apply to special charge No. 2, which is the subject of assignment of error No. 4.

4. Defendant contends that special charge No. 2 erroneously imposed upon it an absolute duty to locate a gas leak. That charge reads:

"I charge you that if you find that the defendant, The Dayton Power and Light Company, was notified that gas was escaping near the place where the explosion occurred, it was the duty of the defendant, The Dayton Power and Light Company, to proceed to ascertain where said gas was escaping and repair the same; and if the defendant, The Dayton Power and Light Company, carelessly and negligently failed to ascertain the location of such leak and stop the same, and by reason of such failure the gas continued to escape from its gas main and

entered the home of the plaintiffs and there exploded and caused injury to the plaintiff, Marcia C. Spargur, the defendant, The Dayton Power and Light Company, is liable therefor.''

It might appear from the portion of this charge preceding the semi-colon that defendant's duty was absolute. However, the remainder of the charge makes it clear that it is only the negligent failure to perform that duty which will result in liability.

One special charge must be considered in connection with all other special charges on the same subject, and if thought to be incomplete, may be supplemented by them. *Wymer-Harris Construction Co.* v. *Glass, Admx.*, 122 Ohio St., 398, 171 N. E., 857, 69 A. L. R., 517; *Deckant* v. *City of Cleveland*, 155 Ohio St., 498, 99 N. E. (2d), 609. The same rule must be followed in considering the various parts of a single charge.

Defendant points out that the jury's answer to special interrogatory No. 2 is modeled very closely upon the language of this special charge. By virtue of that circumstance the answer includes a finding that defendant was negligent.

But defendant argues that it also shows the jury did not grasp the full import of the requirement of proximate cause. As we have seen, this special charge incorporated, by reference as it were, the full definition of proximate cause as contained in the general charge.

Indulging as we must every reasonable presumption in favor of the validity of the verdict, we must assume that the jury followed the full instructions of the court on the subject.

It should be observed that the latter portion of this answer which quotes the abbreviated reference to causation as contained in special charge No. 2 is not responsive to the interrogatory and had nothing to do with the mental processes required of the jury at this point.

5. It is claimed that the verdict in favor of Marcia C. Spargur was so excessive as to be the result of passion and prejudice and was not sustained by sufficient evidence.

Her prayer was for $200,000. The verdict was for $120,000. On the other hand, the verdict for Vendrell L. Spargur, her husband, was for the full $15,000 prayed for.

At the time of the accident Marcia C. Spargur was 33 years

of age. The burns which she sustained covered approximately 45 per cent of her body, mostly her arms and legs, and seriously threatened her life. The burns ranged from first to second and third degree at different points. She was at first in a state of semi-shock. Her eyes were swollen and she suffered excruciating pain. She had blood transfusions, sedatives, anesthetics and a vast amount of surgery. One operation related to the ulna nerve of the left elbow; two were performed upon the bone of the left elbow, and many involved painful and extensive skin grafts. She has developed a great deal of keloid or scar tissue, which is uncomfortable and unsightly. She received painful therapy for the purpose of improving movements in impaired joints in her elbows, wrists and fingers. The movements of these joints are still impaired, and will continue to be so, and she lacks complete coordination of these members. She continues to be nervous. In some areas the nerve ends were seared and will continue to cause discomfort. The extensive keloid or scar tissue about the injured nerves will have a tendency to irritate the nerves and cause abnormal sensations. There is some streaked pigmentation and enlarged pores on the face, and dryness and lack of lubrication of the skin near the mouth. When in her scarred condition she goes swimming with her two small children, people stare at her. She is apparently unable to wear the usual feminine apparel without being conspicuous.

What are these things worth? The verdict is admittedly large, considerably larger than any heretofore recovered in Montgomery County, although not larger than some others being recovered elsewhere.

Defendant frankly admits that this plaintiff sustained serious and permanent injuries adequate to sustain a substantial verdict.

But is this verdict actually excessive? Shall we be bound by the past, or by comparison with other cases, or by experiences with juries in other communities? These things are perhaps to be considered, but are not conclusive. In the field of jury verdicts, as elsewhere, we are obviously in a changing age. It is inevitable that the universal phenomenon of inflation should

affect verdicts.  But the record discloses nothing sensational, spectacular or improper which would so stir the passions and prejudices of jurors as to vitiate this verdict.

The injuries suffered are for the most part of the kind which defy precise measurement.  While the verdict is admittedly large, we cannot say that it is plainly and unmistakably excessive, or that it reflects passion and prejudice.  30 Ohio Jurisprudence, 122 and 127, New Trial, Sections 79 and 80.

7. It is also complained that "the court erred in its charge as to the damages to which the husband, Vendrell L. Spargur, would be entitled for future medical expenses, and for future loss of consortium."

The argument is not that the charge as given was incorrect, but that it should not have been given at all because inapplicable, the defendant contending that there was no evidence that there will be any future medical expenses or care or loss of services and consortium.

Such damages were alleged and made issues in the case. The evidence of permanent disability, scars, irritation of nerves, etc., is sufficient to justify submission to the jury of the issue of future loss of services and consortium.

With regard to future expenses, the charge read (with emphasis added):

"This includes the reasonable value of physicians' and surgeons' services and the expenses of hospital and medical care and attention incurred by him in the treatment of his wife's injuries *and such services and care as will with reasonable medical certainty be required in the future.*"

At the time of trial Marcia Spargur said she had not decided the matter of further surgery with respect to the considerable amount of keloid or scar tissue which she bears, and Dr. Brannen, who performed the skin surgery, said that he had not at that time recommended further surgery.  However, the wife's condition and permanent injuries and future disability and suffering are adequately and impressively proven.  Is it unreasonable to find, even without professional opinion or a declaration of present intention to submit to further skin surgery, that plaintiff's unfortunate condition would with reason-

able medical certainty require further services and care in the long years of this young woman's probable span of life?

There was no motion to withdraw the question of future expenses from the jury. In order that the jury should not speculate, it became the duty of the court to explain the issue and to define the limits of their consideration of the question. In so doing he did not commit error and did not prejudice the defendant.

8. The last assignment of error is that the verdict is against the manifest weight of the evidence on both negligence and proximate cause. No further review of the evidence is needed to demonstrate our reasons for finding that this assignment is not well taken.

No error prejudicial to the defendant appearing in the record, the judgment is affirmed.

*Judgment affirmed.*

WISEMAN, P. J., and MILLER, J., concur.

MILLER, J., of the Tenth Appellate District, sitting by designation in the Second Appellate District.