TATE, Judge
(dissenting).
The writer respectfully dissents.
In the present case, a young woman, aged 25, was severely burned over large areas of her body, endured untold suffering, is seriously disfigured, and at the time of trial had lost 65% of the use of her hands.
Perhaps the disability of both hands can be reduced to only 50% (!) (and this “perhaps” depends upon future surgery and success of future rehabilitation). Perhaps the disfigurement of the face, arms, and legs can be reduced by a series of operations (and this “perhaps” depends not only upon medical skill, but also upon the ability of the human spirit of young Patricia West to endure operation after operation). Nevertheless, the optimistic prognostication that her present disability might be slightly reduced, and that her present disfigurement might be somewhat minimized, is no cause to hold that the trial judge abused his large discretion in the award of $150,000 to this young woman, crippled and disfigured, who has the remainder of her life to suffer, unable to use her hands to perform even the simplest bodily functions or for any useful livelihood.
Our Supreme Court has repeatedly emphasized that an appellate court should not disturb the trial court’s award of general damages for personal injuries in the absence of an abuse of the latter’s very great discretion in this regard, after taking into consideration that each personal injury may be evaluated according to its own peculiar facts and circumstances. LSA-Civil Code Art. 1934(3) ; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Ballanga v. Hymel, 247 La. 934, 175 So.2d 274; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149. See, generally, Comment, 25 La.L.Rev. 545 (1965). In this regard, as these sources note, prior awards for seemingly similar injuries are relevant only insofar as they may indicate that the present award is so greatly out of proportion with past awards as to indicate a possible abuse of the trial court’s large discretion in this regard.
In the face of this repeated admonition, we once again reduce the award made by the trier of fact who, after seeing and hearing the crippled and disfigured claimant, exercised its large discretion to make an award for personal injuries. In reducing this award, we talk of other Louisiana decisions; but it is to be noted that the cases cited by the majority are similar only in that they involved large awards — but large awards for other injuries not involving the permanent crippling and the agonizing suffering of this young woman (and the suffering through long and extended periods of medical treatment).
The awards cited are for injuries not at all comparable, in my opinion, to those of the plaintiff in the present case. There is no Louisiana case involving comparable injuries. Yet we reduce the award by pointing out that less serious injuries were awarded less. This is in the teeth of Gas-pard v. LeMaire’s admonition of the limited function of appellate review under Civil Code Article 1934(3).
We may point out that in other states in which burn cases have been litigated instead of settled, awards such as the pres *113 ent are not at all unusual. See, for instance, Pan American Petroleum Corp. v. Like, Wyo., 381 P.2d 70 (1963) ($186,748.-98); American National Bank & Trust Co. v. Peoples Gas, Light & Coke Co., 42 Ill.App.2d 163, 191 N.E.2d 628 (1963) ($150,000 — housewife, no earnings) ; Spargur v. Dayton Power & Light Co., 109 Ohio App. 37,163 N.E.2d 786 (1959) ($135,-000 — housewife, no earnings). Further, had the claimant brought suit in a federal court even in Louisiana, an award in this amount would be usual and would be immune from appellate tinkering. See Sylve v. E. W. Gravolet Canning Co., 278 F.Supp. 669 (E.D.La., 1967) ($127,414.95, plus medical expenses; including $90,000 past and future suffering and anguish and $28,-000 loss of future earnings — $1,800 per year computed to cash value).
The majority relies upon our decision in Knotts v. Employers Casualty Co., La.App., 177 So.2d 630, as an indication that the present award of $150,000 is excessive. In Knotts, we awarded $45,000 for facial disfigurement of a young lady who was a beauty queen. The present young woman was not a beauty queen, although her former attractiveness is forever lost; but we overlook that the injuries in Knotts did not involve the permanent disability and agonizing suffering of Patricia West in the instant case. To me, the fact that Miss Knotts’ injuries were valued at $45,000 is a strong reason to hold that the present trial court did not abuse its discretion in awarding $150,000 to Miss West.
The disfigurement is a comparatively minor part of Patricia West’s injuries— although if that were all the damage she sustained, an award of $45,000 would not be manifestly excessive either. However, unlike Miss Knotts, Patricia West sustained horrible and extended suffering through the large burned areas of her skin surface, and she will continue to suffer through future surgery and through future painful rehabilitation.
Additionally, and most important of all, Patricia West has lost much of the use of her hands, and for the rest of her life she will have to depend on others to satisfy even some of her intimate personal bodily needs.
The majority concedes that she is permanently disabled for the rest of her life, but feels that her loss of $25 per week earnings is so minimal that apparently no substantial award should be made for it. Yet the difference in being a person able to earn one’s own way through life, instead of now being a helpless prisoner of a household dependent upon others, is entitled to substantial damages. Further, Miss West, at the age of 25, has a life expectancy of at least 45 years at the time of injury. See Am.Jur. 2d Desk Book Document 140 (Mortality Tables). For 40 years of working life at $1,300 per year, this amounts to a gross loss of earnings of $52,000. Even if discounted to $25,000-$35,000 to its present cash value, this is no insignificant item.
But aside from the monetary loss and the ability to support oneself, the destruction of her life as a human being and her disability from performing many of the ordinary duties of everyday life are illustrated by some of the many things which the plaintiff now cannot do, such as: fully clothe herself, get in and out of the bathtub and bathe herself; handle cooking pots or wash dishes without breaking some; handle a baby; lift large objects; take care of her simple bodily needs; iron clothes; handle utensils without great difficulty; open a can of food; shave her legs and underarms ; hang clothes to dry; wring out clothes; open a soft drink bottle without great difficulty; mop a floor; open a car door, or have the hand-grip sufficient to open a house-door that sticks, etc. These, of course, represent only specific difficulties for plaintiff, but I am impressed with the fact that these activities are what make up most of the daily movements of the average woman in today’s society. Additional side effects that limit her activities include that her sensitized skin blisters if she goes in the sun, and she suffers from severe itching which for health reasons she *114 cannot scratch (even if her maimed hands could be used any more for scratching).
The disability and disfigurement not only prevents Patricia West from economically sustaining herself throughout life. They not only greatly restrict her enjoyment of life and her non-economic activities. They also have effectively barred her from future re-marriage or the social pleasures of male companionship. An award of $150,-000 for the destruction of a human life through tort cannot be said to be an abuse of discretion.
With great respect for my brethren of the majority, it seems to me that they reduced the award by looking merely at other large awards which did not involve comparable injuries and that they ignored the primary function of appellate review of quantum: which is not to equalize awards, but simply to determine if the trier of fact abused its large discretion. I cannot say the trier of fact did so under the present circumstances, and therefore I must respectfully dissent.
En banc.
Per curiam denial of plaintiff’s application for rehearing
In an application for rehearing plaintiff complains we failed to make an award for past medical expense in the sum of $5,975.04. It is true this item was not mentioned expressly, but it was our intention that it be included in the award of $70,000 for general damages and loss of income. With this explanation, the application for rehearing is denied.
FRUGE, J., votes for rehearing.

On Application for Rehearing.

* * *